UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **Wilson Umanzor on behalf of himself and others similarly situated,** <br><br>        **Plaintiffs,**<br><br>v.<br><br>**FreedomRoads, LLC;**<br>-and-<br>**Camping World RV Sales, LLC,** a/k/a Camping World RV Sales, a/k/a Camping World RV Sales (Hanover CO), a/k/a Camping World RV Sales (Henrico CO), a/k/a Camping World RV Sales (Newport News CI), a/k/a Camping World RV Sales (Prince William CO), a/k/a Camping World RV Sales (Spotsylvania CO), a/k/a Airstream of Virginia (Hanover CO), a/k/a Airstream of Virginia (Spotsylvania CO), a/k/a Gander RV (Spotsylvania CO), a/k/a Gander RV Sales (Roanoke CO), a/k/a RV World of Virginia (Spotsylvania CO), and a/k/a McGeorge's Rolling Hills (Hanover CO);<br>-and-<br>**RV World, LLC,** a/k/a Gander RV, a/k/a Gander RV Sales (Spotsylvania CO), and a/k/a RV World of Virginia (Hanover CO)<br><br>        **Defendants.** | Civil Action No.  **3:23cv117** |

## COMPLAINT

Plaintiff Wilson Umanzor, on behalf of himself and all others similarly situated, respectfully moves for judgment against defendants: FreedomRoads, LLC **(hereinafter "FreedomRoads")**; Camping World RV Sales, LLC, a/k/a Camping World RV Sales, a/k/a

1

Camping World RV Sales (Hanover CO), a/k/a Camping World RV Sales (Henrico CO), a/k/a Camping World RV Sales (Newport News CI), a/k/a Camping World RV Sales (Prince William CO), a/k/a Camping World RV Sales (Spotsylvania CO), a/k/a Airstream of Virginia (Hanover CO), a/k/a Airstream of Virginia (Spotsylvania CO), a/k/a Gander RV (Spotsylvania CO), a/k/a Gander RV Sales (Roanoke CO), a/k/a RV World of Virginia (Spotsylvania CO), a/k/a McGeorge's Rolling Hills (Hanover CO), **(hereinafter "Camping World");** and RV World, LLC, a/k/a Gander RV, a/k/a Gander RV Sales (Spotsylvania CO), and a/k/a RV World of Virginia (Hanover CO), **(hereinafter "RV World")**; **(collectively "Defendants")**, as follows:

## Introduction

1.  This is a Rule 23 class action claim for unpaid overtime in violation of the Virginia Overtime Wage Act, § 40.1-29.2 ("VOWA") for failure to pay an overtime premium to Plaintiff and other similarly situated employees, for the time periods set forth herein. Plaintiff brings this matter as a class action on behalf of himself and others similarly situated.

## Jurisdiction and Venue

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy exceeds $75,000 and there exists minimal diversity amongst the parties.

3.  Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) since the acts and omissions giving rise to this lawsuit have taken place in the Eastern District of Virginia.

4.  Defendants are subject to personal jurisdiction in the Commonwealth of Virginia.

## Parties

5.  Plaintiff Wilson Umanzor ("Umanzor") is a resident of Virginia who was employed by FreedomRoads as a Recreational Vehicle ("RV") Salesman during the relevant

2

time period. Umanzor sold both trailers and automobiles. In most weeks Umanzor primarily sold trailers, but in some weeks he primarily sold automobiles. Umanzor seeks to represent two subclasses of individuals who are similarly situated to him:

      a.    a subclass of all individuals employed by any Defendant as a salesperson at any location in Virginia between July 1, 2021 and June 30, 2022 whose primary duty involved selling trailers, who were not paid overtime compensation for all hours worked over 40 in a workweek during that time period, (the "Trailer Sales" subclass); and

      b.    a subclass of all individuals employed by any Defendant as a salesperson, service advisor, or mechanic, primarily engaged in selling or servicing automobiles or trucks (as opposed to "trailers"), at any location in Virginia between July 1, 2021 and August 9, 2021, who were not paid overtime compensation for all hours worked over 40 in a workweek during that time period, (the "Auto Sales/Service" subclass).

6.    FreedomRoads, LLC ("FreedomRoads") is a Minnesota limited liability company, with its primary place of business in Lincolnshire, IL, and along with co-defendants Camping World and RV World, operates a network of recreational vehicle ("RV") dealerships at various locations throughout Virginia, including Henrico County, Hanover County, Spotsylvania County, Roanoke County, the City of Newport News, Prince William County, and possibly other locations. FreedomRoads's primary business is selling and servicing RV's (including motor homes and camping trailers) through its network of local, regional, and online RV dealerships. FreedomRoads, along with its co-defendants, is a subsidiary of Camping World Holdings, Inc. (NYSE listing as CWH), headquartered in Lincolnshire, IL.

7.    Camping World RV Sales, LLC, a/k/a Camping World RV Sales, a/k/a Camping World RV Sales (Hanover CO), a/k/a Camping World RV Sales (Henrico CO), a/k/a Camping

World RV Sales (Newport News CI), a/k/a Camping World RV Sales (Prince William CO), a/k/a Camping World RV Sales (Spotsylvania CO), a/k/a Airstream of Virginia (Hanover CO), a/k/a Airstream of Virginia (Spotsylvania CO), a/k/a Gander RV (Spotsylvania CO), a/k/a Gander RV Sales (Roanoke CO), a/k/a RV World of Virginia (Spotsylvania CO), a/k/a McGeorge's Rolling Hills (Hanover CO), **(hereinafter "Camping World")** is a Minnesota limited liability company, with its primary place of business in Lincolnshire, IL, and along with co-defendants FreedomRoads and RV World, operates a network of RV dealerships at various locations throughout Virginia, including Henrico County, Hanover County, Spotsylvania County, Roanoke County, the City of Newport News, Prince William County, and possibly other locations. Camping World's primary business is selling and servicing recreational vehicles ("RV's") which include motor homes, and camping trailers. Camping World, along with its co-defendants, is a subsidiary of Camping World Holdings, Inc. (NYSE listing as CWH), headquartered in Lincolnshire, IL.

8.   RV World, LLC, a/k/a Gander RV, a/k/a Gander RV Sales (Spotsylvania CO), a/k/a RV World of Virginia (Hanover CO), **(hereinafter "RV World")** is a Minnesota limited liability company, with its primary place of business in Lincolnshire, IL, and along with co-defendants FreedomRoads and Camping World, operates a network of RV dealerships at various locations throughout Virginia, including Henrico County, Hanover County, Spotsylvania County, Roanoke County, the City of Newport News, Prince William County, and possibly other locations. RV World's primary business is selling and servicing recreational vehicles ("RV's") which include motor homes, and camping trailers. RV World, along with its co-defendants, is a subsidiary of Camping World Holdings, Inc. (NYSE listing as CWH), headquartered in Lincolnshire, IL.

9. Defendants are a joint employer in that they share common and integrated functions including human resources, payroll, management, accounting, and sales systems, and have common policies and practices with respect to payment (or nonpayment) of overtime wages for its sales, service, and mechanic employees across its RV dealer network.

Factual Allegations

10. Umanzor was employed as an RV salesman with Defendants on more than one occasion between 2018 and 2021, at more than one of Defendants' locations. Most recently, Umanzor was re-hired by Defendants at the Hanover County McGeorge Rolling Hills/Camping World RV location on or about February 26, 2021 and was terminated on October 21, 2021.

11. Umanzor had previously been employed at Defendants' Spotsylvania County location.

12. Defendants have various other Virginia locations selling RV's, including Newport News, Prince William County, Roanoke County, and Henrico County.

13. At each location, Defendants employ salespeople, service advisors, and mechanics who sell and service RV's.

14. Upon information and belief, Defendants collectively employ at least 100 or more salespeople, service advisors, and mechanics at its Virginia locations.

15. Defendants have/do not pay overtime compensation to its salespeople, service advisors, or mechanics, because it classifies them as exempt from the Fair Labor Standards Act's overtime requirements pursuant to 29 USC § 213(b)(10)(A), (hereinafter the **"FLSA Auto Dealer Exemption"**), and/or 29 USC § 213(b)(10)(B), (hereinafter the **"FLSA Trailer Sales Exemption"**).

16. Plaintiffs do not contest (for purposes of this lawsuit) that Defendants are entitled

to invoke the FLSA Auto Dealer Exemption and/or the FLSA Trailer Sales Exemption to avoid paying overtime to employees who perform duties covered by those exemptions. However, during certain times between July 1, 2021 through June 30, 2022, Defendants were obligated to pay its employees overtime as required under Virginia law, and the FLSA Auto Dealer and Trailer Sales Exemptions did not apply in Virginia, as set forth herein.

17. On July 1, 2021, Code of Virginia § 40.1-29.2 known as the Virginia Overtime Wage Act ("VOWA") was newly enacted and went into effect for employers in Virginia.

18. As of July 1, 2021, VOWA did <u>not</u> incorporate either the FLSA Auto Dealer Exemption or the FLSA Trailer Sales Exemption. As of that date, Defendants were required by VOWA to pay an overtime premium to its employees, including Umanzor, who were otherwise exempt from federal overtime under the aforementioned FLSA exemptions. *See* Va. Code § 40.1-29.2 (enacted on July 1, 2021, prior to the July 1, 2022 amendment), a copy of which is attached hereto as **Exhibit 1**.

19. Following VOWA's effective date of July 1, 2021, Defendant continued to classify Umanzor as well as all other similarly situated individuals as exempt from overtime, and did not pay them any overtime.

<u>FLSA Auto Dealer Exemption is added to VOWA on August 10, 2021, while the FLSA Trailer Sales Exemption is not added to VOWA until July 1, 2022</u>

20. On August 10, 2021, VOWA was amended pursuant to a special session of the Virginia General Assembly.

21. Effective August 10, 2021, VOWA was amended to include the FLSA Auto Dealer Exemption set forth in 29 U.S.C. § 213(b)(10)(A), <u>but not</u> the FLSA Trailer Sales Exemption set forth in § 213(b)(10)(B). *See* Virginia Acts of Assembly - 2021 SPECIAL

SESSION II, at Enactment No. 20 (August 10, 2021), a copy of which is attached hereto as **Exhibit 2** (relevant portions highlighted) (also available at https://lis.virginia.gov/cgi-bin/legp604.exe?213+ful+CHAP0001, last visited February 13, 2023).

22. Therefore, during the time period that the FLSA's Auto Dealer Exemption was not incorporated into VOWA (between July 1 and August 9, 2021), Defendants' sales, service, and mechanic employees (who primarily sold or serviced automobiles or trucks) were entitled to overtime pursuant to VOWA for all weeks in which they worked over 40 hours.

23. Following the Virginia General Assembly's 2021 Special Session II amendment adding the FLSA Auto Dealer Exemption on August 10, 2021, Umanzor, and similarly situated RV sales employees, continued to be eligible for overtime under VOWA because his/their primary duty was selling trailers, and the FLSA Trailer Sales exemption was not incorporated into VOWA at that time.

24. The FLSA Trailer Sales exemption was eventually adopted in Virginia effective July 1, 2022 pursuant to the VOWA amendment which incorporated nearly all aspects of the Fair Labor Standards Act into VOWA as of that date. *See* Va. Code § 40.1-29.2 (amended effective July 1, 2022), a copy of which is attached hereto as **Exhibit 3**.

> RV sales employees are eligible for overtime from July 1, 2021 through June 30, 2022 for all weeks in which their primary duty involved selling "trailers"

25. Defendants' RV sales employees, including Umanzor, sold both "automobiles" (which literally means self-moving) such as motor homes and camper vans, and "trailers" (which may be attached and pulled by an automobile) such as camping trailers and fifth wheels.

26. Defendants use the terms "motorized" to describe RV's that are automobiles, and "towable" to describe RV's that are trailers.

27. While Defendants' RV sales employees sold both "automobiles" and "trailers," the overwhelming majority of their time was spent selling "trailers."

28. Since November 2021, Defendants' website for its Camping World RVs has reflected between three to ten times the number of "towable" RV's for sale, compared to "motorized" RV's for sale, within a 200 mile radius of Richmond Virginia.

29. As of February 8, 2023, Defendants listed "towable" RV's for sale at a greater than 3:1 ratio compared to "motorized" RV's for sale within 200 miles of Richmond, Virginia on its rv.campingworld.com website, as follows:

   a. Defendants list 1,146 "towable" RV's for sale within 200 miles of Richmond, Virginia on its rv.campingworld.com website (image below, red marker added to emphasize "1,146 results") (as visited on Feb. 8, 2023)



b.  Defendants list 351 "motorized" RV's for sale within 200 miles of Richmond, Virginia on its rv.campingworld.com website, (image below, red marker added to emphasize "351 results") (as visited on Feb. 8, 2023)



30.  As of November 30, 2021 Defendants listed "towable" RV's for sale at a nearly 10:1 ratio compared to "motorized" RV's for sale within 200 miles of Richmond, Virginia on its rv.campingworld.com website, as follows:

9

        a.    Defendants listed 2,110 "towable" RV's for sale within 200 miles of Richmond, Virginia on its rv.campingworld.com website, (image below, red marker added to emphasize "2,110 results") (as visited on Nov. 30, 2021)



10

b. Defendants listed 220 "motorized" RV's for sale within 200 miles of Richmond, Virginia on its rv.campingworld.com website, (image below, red marker added to emphasize "220 results") (as visited on Nov. 30, 2021)



31. Defendants' business model, as evidenced by its available RV's for sale, requires its sales employees to primarily sell trailers, as opposed to automobiles.

32. Umanzor, and other similarly situated RV sales employees, sold significantly

11

more trailers ("towable" RV's) than motorized RV's while working for Defendants.

33. Most, if not all of Defendants' full-time RV sales employees are scheduled to work 47.5 hours per week, but in fact work around 50 or more hours per week primarily selling trailers.

34. Duties that Defendants required of its employees beyond the normal 47.5-hour week included:

    a. Mandatory GroupMe messages to its sales employees, whereby Defendants required its employees to read and respond at all times, even away from work;

    b. Mandatory call thresholds of 40 calls per day (except for Saturdays), whereby Defendants required employees to work beyond the end of their scheduled day in order to achieve 40 sales calls;

    c. Mandatory delivery of RV's on the employee's day off, whereby Defendants required employees to deliver RV's to the customer on the employee's day off;

    d. Mandatory customer service and sales to customers who walked into the showroom or sales lot at the end of the workday. Defendants required Employees to work with all customers regardless of the posted closing hours or scheduled end-of-work day, resulting in salespeople working an hour or more beyond their scheduled shift each day.

35. Other than in weeks where an employee took vacation, sick, or other approved leave, a 50-hour, or more, work week was the norm for Umanzor and other similarly situated salespersons, service advisors, and/or mechanics.

36. Defendants were aware that Plaintiff, and similarly situated employees, consistently worked long hours, and it encouraged or required the same.

37. There may be occasional weeks in which Umanzor or other similarly situated

employees primarily sold "motorized" RV's, and as such, any such weeks occurring between July 1, and August 10, 2021, are included in this VOWA claim. But, the overwhelming majority of units for sale and sold by Defendant are "towable" rather than motorized, and the attendant primary activity of its sales employees was the sale of such "towables," as such, Defendants were not exempt from paying its employees overtime as required by VOWA between July 1, 2021 through June 30, 2022.

38. Other than the FLSA Auto Dealer Exemption that may apply to a small amount of weeks pursuant to VOWA's special session enactment between August 10, 2021 through June 30, 2022, there is no other exemption available to defeat Umanzor's VOWA claim on behalf of himself and others sales employees between July 1, 2021 and June 30, 2022, which is the date the VOWA amendments to Va. Code § 40.1-29.2 incorporated nearly all FLSA exemptions (including the FLSA Trailer Sales Exemption applicable to Umanzor).

39. Plaintiff, and those similarly situated, were all subject to the same payroll practices and policies of Defendants.

40. Defendants' failure to pay wages was a willful and/or knowing violation of the laws.

### Class Action Allegations

#### A. Class Definitions

41. Plaintiff, the Rule 23 Class Representative, seeks to maintain claims pursuant to Va. Code §40.1-29.2, individually, and on behalf of two classes of current and former salespeople, service advisors, and/or mechanics who:

    a. were employed by any of Defendants as a salesperson at any location in Virginia from July 1, 2021 through June 30, 2022, and whose primary duty involved the

sale of trailers (or "towable" RV's) and who were not paid overtime compensation for all hours worked over 40 in a workweek during that time period, (**the "Trailer Sales" subclass**); or

      b.    were employed by any of Defendants as a salesperson, service advisor, or mechanic primarily engaged in selling or servicing "motorized" RV's, automobiles or trucks (as opposed to "trailers" or "towable" RV's) at any location in Virginia between July 1, 2021 and August 9, 2021, and who were not paid overtime compensation for all hours worked over 40 in a workweek during that time period, (**the "Auto Sales/Service" subclass**).

42.    The division into subclasses set forth above are made necessary by the August 10, 2021 special session amendment to VOWA which makes Defendants' automobile/truck salesmen, service advisors, and mechanics exempt as of that date, (<u>but, not its salesmen, service advisors or mechanics primarily engaged in selling trailers</u>).[1]

43.    During the aforementioned time periods, the above classes of individuals were all misclassified as exempt from VOWA's overtime requirement despite the existence no applicable exemption(s) allowing such treatment.

### B. Efficiency of Class Prosecution of Common Claims

44.    Certification of classes of current and former salespeople, service advisors, and mechanics is the most efficient and economical means of resolving the questions of law and fact

---

[1] Plaintiff currently understands that Defendant's mechanics and service advisors primarily service "automobiles" and not trailers or "towable" RV's. In the event that discovery later reveals that Defendant's mechanics and service advisors primarily serviced trailers or "towable" RV's, and therefore remained non-exempt after August 10, 2021, Plaintiffs will seek to amend and/or combine the class definitions to include such employees.

14

which are common to the claims of the Class Representative and the proposed classes. Conversely, proceeding on an individual basis will require the filing of potentially scores of duplicative individual suits which will waste judicial time and resources and create the risk of inconsistent or varying adjudications of common issues.

### C. Numerosity and Impracticality of Joinder

45. The classes which the Class Representative seeks to represent are so numerous that joinder is impracticable. On information and belief, the putative class during the liability periods number over 100 current and former salespeople, service advisors, and mechanics in Virginia who were denied the payment of overtime during the relevant periods.

### D. Common Questions of Law and Fact

46. Defendants' (mis)classification of the Plaintiff and those similarly situated, as well as the unanimity in liability period, presents common issues of fact in this matter. Moreover, the challenged pay and classification practices apply uniformly and present identical questions of law and fact with respect to the Class Representative and those whom he seeks to represent.

### E. Typicality of Claims and Relief Sought

47. The claims of the Class Representative are typical of those of the class members as a whole in that their claims are based on the same pay practices and exemption classification. The relief sought by the Class Representative for unpaid overtime wages is also typical of the relief which is sought on behalf of the proposed subclasses.

### F. Adequacy of Representation

48. Plaintiff is an adequate class representative for the subclasses. His interests are co-extensive with those of the members of the proposed subclasses he seeks to represent.

Plaintiff has knowledge of the applicable pay practices and exemption classification. He is committed to being a representative of the subclasses and has retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

### G. Rule 23(B)(3) Requirements

49. Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common denial of overtime compensation, the common exempt (mis)classification of class members, the relevant time period, and the applicability of VOWA. Such questions are applicable to all putative subclass members.

50. A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of numerous individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Numerous individual cases similar to Plaintiff's would clog the court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issue(s) could lead to inconsistent or varying adjudications of the same issue(s).

51. The putative subclass members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized contractual compensation practices and their recovery in either an individual or class action will be based on the amount of overtime compensation that each Plaintiff has been denied by Defendants.

52. The Class Representative and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed subclass members within the Commonwealth of Virginia.

53. It is desirable to concentrate the claims in this forum because the employment practices complained with respect to the Class Representative occurred in this forum.

54. The Class Representative and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this forum.

## COUNT I
### Violation of Va. Code § 40.1-29.2 (Virginia Overtime Wage Act)

55. Between July 1, 2021 and June 30, 2022, Defendants have violated Va. Code § 40.1-29.2 by failing to pay Plaintiff, and those similarly situated sales employees, primarily engaged in selling trailers or towable RV's, *i.e.,* the Trailer Sales subclass, an overtime premium for all hours worked beyond 40 hours per week.

56. Between July 1, 2021 and August 9, 2021, Defendants failed to comply with Va. Code § 40.1-29.2 by failing to pay Plaintiff, and similarly situated sales employees, mechanics, and service advisers, primarily engaged in selling or servicing automobiles or motorized RV's, *i.e.* the Auto Sales/Service subclass, an overtime premium for all hours worked beyond 40 hours per week.

57. Defendants knew that Plaintiff, and the putative subclass members were not paid overtime wages for all hours worked over 40 hours per week. Defendants knowingly and willfully failed to pay Plaintiffs all overtime wages due.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief against Defendants:

A. That the Court certify this action as Class Action Pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. All unpaid overtime damages due to Plaintiff and those similarly situated;

C. Liquidated damages equal to the unpaid overtime under Va. Code § 40.1-29(J);

D. Treble damages under Va. Code § 40.1-29(J) for all claims where such relief is available;

E. Reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit pursuant to 40.1-29.2; and

F. Such other relief as the Court deems appropriate.

Plaintiffs respectfully demand **TRIAL BY JURY**.

    Respectfully submitted,
    **Wilson Umanzor, on behalf of himself and others similarly situated**
    Plaintiff

    By: */s/ Craig Juraj Curwood*
    Craig Juraj Curwood (VSB No. 43975)
    Zev H. Antell (VSB No. 74634)
    Samantha R. Galina (VSB No. 96981)
    Butler Curwood, PLC
    140 Virginia Street, Suite 302
    Richmond, VA 23219
    Telephone: (804) 648-4848
    Fax: (804) 237-0413
    craig@butlercurwood.com
    zev@butlercurwood.com
    samantha@butlercurwood.com